IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHRYN MICHELE CRANDALL,

        Plaintiff,

vs.                                                                    2:23-cv-00084-MIS-LF

MARTIN O'MALLEY,[1]
Commissioner of the Social Security Administration,

        Defendant.

### **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Kathryn Michele Crandall's Motion to Reverse and Remand, with Supporting Memorandum (Doc. 20), which was fully briefed on January 8, 2024. *See* Docs. 27, 28. The Honorable District Judge Margaret I. Strickland referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 7. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and the ALJ followed the correct legal standards. I therefore recommend that the Court deny Ms. Crandall's motion to remand and affirm the Commissioner's decision.

---

[1] Martin O'Malley was confirmed as the Commissioner of Social Security on December 18, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is automatically substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this case.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

Case 2:23-cv-00084-MIS-LF   Document 29   Filed 03/13/24   Page 3 of 19

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 416.920(a)(4) (i–iv); *Grogan*, 399 F.3d at 1260–61.  If the

claimant cannot show that his or her impairment meets or equals a Listing but proves that he or

she is unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience.  *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

III.    **Background and Procedural History**

Ms. Crandall was born in 1976, finished high school, and has a cosmetology degree. AR

60, 64, 321.[4]  She currently is divorced and lives in Las Cruces, New Mexico, with her two adult

sons. AR 61, 293.  She occasionally travels to Midland, Texas, to help her aging parents by

driving for them and paying the bills. AR 62–63.  Ms. Crandall previously worked performing

data entry, as an information clerk at a call center, as a retail salesperson, and as a hair stylist.

AR 64–65, 322, 404.

On February 3, 2017, Ms. Crandall filed an application for Supplemental Security

Income ("SSI") and Disability Insurance Benefits ("DIB") alleging disability beginning

November 12, 2007. AR 98.  ALJ Michael Leppala issued an unfavorable decision on June 7,

2019. AR 95–114.  That decision is not at issue here.

Ms. Crandall filed a second application for Supplemental Security Income ("SSI") on

January 27, 2020,[5] alleging disability since June 8, 2019, due to psoriatic arthritis, fibromyalgia,

chronic pain, spinal stenosis, PTSD, insomnia anxiety, sleep apnea, and diabetes. AR 292–98,

320.  The Social Security Administration ("SSA") denied her claim initially and on

reconsideration. AR 150–59.  Ms. Crandall requested a hearing before an ALJ. AR 273–75.  On

---

[4] Documents 10-2 through 10-9 comprises the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] There is a discrepancy in the briefing as to the dates of Ms. Crandall's application.  Ms. Crandall notes that she filed an application in February 2017 and a second application in October 2019. Doc. 20 at 1, 3.  The Commissioner notes the application date as November 2019. Doc. 27 at 2. The record reflects that Ms. Crandall previously filed an application for SSI on October 1, 2019. AR 279–88.  It appears that the most recent application for SSI is January 27, 2020. AR 292–98.  Both parties agree that the June 28, 2022, decision is at issue in this case. Doc. 20 at 1; Doc. 27 at 2.

April 14, 2022, ALJ Jeffrey Holappa held a hearing.  AR 54–85.  The ALJ issued an unfavorable

decision on June 28, 2022.  AR 28–53.

At step one, the ALJ found that Ms. Crandall had not engaged in substantial, gainful

activity since her application date.[6]  AR 36.  At step two, the ALJ found that Ms. Crandall

suffered from the following severe impairments:  degenerative disc disease of the cervical and

lumbar spine, psoriatic arthritis, fibromyalgia, chronic pain syndrome, automomic neuropathy,

diabetes mellitus, and obesity.  *Id.*  The ALJ also found that Ms. Crandall "presents with a

number of medically determinable impairments that do not significantly limit [her] ability to

perform basic work activities, including a history of hypertension, gastroenteritis, and obstructive

sleep apnea."  AR 37.  He additionally found that Ms. Crandall's medically determinable mental

impairments of depression and anxiety were nonsevere.  *Id*.  At step three, the ALJ found that

none of Ms. Crandall's impairments, alone or in combination, met or medically equaled a

Listing.  AR 39–40.  Because the ALJ found that none of the impairments met a Listing, the ALJ

assessed Ms. Crandall's RFC.  AR 41–45.  The ALJ found Ms. Crandall had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except she can lift and carry
> up to 20 pounds occasionally and 10 pounds frequently.  She can sit, stand, or
> walk for up to 6 hours each in an 8-hour workday.  She can push and pull as much
> as she can lift and carry but is limited to occasional climbing of ramps and stairs,
> never climbing ladders or scaffolds, and occasional balancing, stooping, kneeling,
> crouching and crawling.  Claimant is also limited to frequent bilateral reaching,
> handling, fingering, and feeling.  Claimant is further limited to no exposure to
> unprotected heights or moving mechanical parts.  Finally, claimant is limited to
> understanding, remembering, and carrying out simple and detailed but not

---

[6] Under Title XVI, Ms. Crandall is not eligible to receive SSI benefits for any period before the
date on which she filed for SSI.  20 C.F.R. § 416.335; SSR 83-20, 1983 WL 31249, at *1, 7;
*Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir.1995).  To be entitled to SSI, a claimant must show
that he or she was disabled between the date on which he or she applied for SSI benefits and the
date of the ALJ decision.  20 C.F.R. §§ 416.330, 416.335, 416.1476(b)(1); *Baldwin v. Barnhart*,
167 F. App'x 49, 51 (10th Cir.2006).  Here, Ms. Crandall must show she was disabled between
January 27, 2020, and June 28, 2022.  *See* AR 292 (application for SSI), 28–53 (ALJ decision).

complex instructions, further defined as semi-skilled (SVP[7] 4 or below) work;
making commensurate semi-skilled (SVP 4 or below) work-related decisions;
dealing with changes consistent with a semi-skilled (SVP 4 or below) setting; and
maintaining concentration, persistence, and pace for at least two-hour intervals
over a normal 8-hour workday, 40-hour workweek, with standard breaks.

AR 41.

At step four, the ALJ concluded that Ms. Crandall had no past relevant work.  AR 45.

The ALJ found Ms. Crandall not disabled at step five because she could perform jobs that exist

in significant numbers in the national economy—such as price tagger, photocopy machine

operator, and non-postal mail clerk.  AR 46–47.  On November 25, 2022, the Appeals Council

denied Ms. Crandall's request for review.  AR 8–13.  Ms. Crandall timely filed her appeal to this

Court on January 30, 2023.[8]  Doc. 1.

## IV.    Ms. Crandall's Claims

Ms. Crandall raises three arguments for reversing and remanding this case:  (1) the ALJ

failed to properly evaluate her RFC by failing to properly evaluate her mental impairments at

step four; (2) the ALJ failed to properly evaluate her symptoms as required by Social Security

Ruling ("SSR") 16-3p; and (3) the ALJ failed to make an obesity assessment under SSR 19-2p.

*See* Doc. 20.  For the reasons discussed below, I find that the ALJ properly assessed Ms.

Crandall's RFC, properly assessed her symptoms as required by SSR 16-3p, and that Ms.

---

[7] "Agency regulations and policy direct ALJs to consider the [Dictionary of Occupational Titles ("DOT")] as the primary source of occupational information used in disability determinations." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); 20 C.F.R. § 416.960(b)(2); SSR 82-61, 1982 WL 31387, at *2.  The Commissioner uses materials published by the Department of Labor—including the DOT—to classify occupations as unskilled, semi-skilled, and skilled.  20 C.F.R. § 416.968.  The DOT lists a specific vocational preparation ("SVP") time for each described occupation.  Using the skill level definitions in 20 C.F.R. § 416.968, unskilled work corresponds to an SVP of 1 to 2; semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9 in the DOT.  SSR 00-4p, 2000 WL 1898704, at *3.

[8] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 9.

Crandall failed to develop the argument regarding obesity.  I therefore recommend that the Court affirm the Commissioner's decision and dismiss this case.

## V.    Discussion

### A.   The ALJ Properly Assessed Ms. Crandall's Mental Impairments.

Ms. Crandall argues that the ALJ failed to adequately consider her the RFC with respect to her mental impairments.  Doc. 20 at 5–15.  Specifically, she asserts that "the ALJ failed to appropriately evaluate the mental impairments at step four."  Doc. 20 at 6.  She also assets that the ALJ failed to consider "the possibility that psychological disorders combine with physical problems."  *Id.* at 7 (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996).  Ms. Crandall's arguments are without merit.

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level."  SSR 83-10, 1983 WL 31251, at *2 (1983).  The RFC must reflect "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.*

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996 WL 374184, at *7.  In addition, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or
> inconsistent with the evidence in his or her record and how [the ALJ's] evaluation

> of the individual's symptoms led to [the ALJ's] conclusions.  [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."  It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

*Id*. at *10.

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set forth in 20 C.F.R. § 416.929.  First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.  20 C.F.R. § 416.929(b).  Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.  20 C.F.R. § 416.929(c).

Ms. Crandall does not contend that the ALJ failed to complete the first step for evaluating her mental impairments.  The ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 42; 20 C.F.R. § 416.929(b).  Ms. Crandall contends that the ALJ failed at the second step by not properly assessing the intensity and persistence of her mental impairments.  Doc. 20 at 6.  An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  As a baseline, the ALJ must support his or her findings with specific weighing of the evidence, and "the record must demonstrate that the ALJ considered all of the evidence."  *Id.* at 1009–10.  This does not mean

that an ALJ must discuss every piece of evidence in the record.  But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting.  *Id.* at 1010.

At step two, the ALJ assessed Ms. Crandall with having mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  AR 37.  The ALJ found that Ms. Crandall's mental impairments, including her depression and anxiety, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  *Id.*

Although Ms. Crandall argues that the ALJ did not make a proper assessment at step four, she acknowledges the ALJ's findings at step two.  Doc. 20 at 6–7.  She does not, however, explain how those findings are insufficient.  *Id.*  At step two, the ALJ explained that "[d]uring the period at issue, [Ms. Crandall] received no formal mental or behavioral health treatment." AR 37.  He discussed Ms. Crandall's brief hospitalization in November of 2021 related to reports of suicidal thoughts or ideation without a definite plan or intent.  *Id.*; *see also* AR 919–99.  The ALJ noted that Ms. Crandall "described being tired of dealing with her physical impairments but otherwise presented with normal mood, affect and behavior," and "was discharged in improved status and did not require any additional treatment or follow-up."  AR 37–38.  The ALJ noted Ms. Crandall's "routine mental status examinations across the record document unremarkable status in terms of memory, attention, cognition and thought processing or thought content."  AR 38.  The ALJ noted that Ms. Crandall periodically reported anxiety or depression, typically in the context of her physical impairments or changed financial circumstances.  AR 38, 39.  He also noted that Ms. Crandall was able to navigate a broad range of daily activities.  *Id.*  The ALJ

further reviewed and considered the consultative examination by Dr. Luisa Castellanos, Ph.D., and the state agency consultants reports,[9] both of which found that Ms. Crandall "would not have more than mild limitation in any functional area." *Id*.

Notwithstanding the discussion at step two, Ms. Crandall contends that the ALJ failed to provide a proper analysis of her mental impairments at step four.  Doc. 20 at 6.  Generally, the "criteria used at steps two and three of the analysis to evaluate mental impairments are 'not an RFC assessment,' and . . . '[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].'"  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *4, *7).  "[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."  *Id.* at 1068–69.  An ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis."  *Id*. at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4).  In assessing a claimant's RFC, an "ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not."  *Id.* at 1069 (emphasis in original).  In addition, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  SSR 96-8p, 1996 WL 374184, at *7.

---

[9] Ms. Crandall does not take issue with the ALJ's treatment of any of the consultative examiners or the state agency consultants' opinions.  *See generally* Doc. 20.

While the RFC assessment must include a narrative discussion, that is not to say that the narrative discussion must come under a particular heading in the decision.  Rather, when the ALJ has adequately discussed the evidence at step two, the ALJ need not repeat that analysis at other steps of the sequential evaluation.  *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (finding that the ALJ considered plaintiff's impairment in determining his RFC when ALJ discussed impairment in detail at step two but did not repeat the discussion at step four); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730, 733–34  (10th Cir. 2005) (holding that an ALJ's factually-substantiated findings at other steps of the sequential evaluation process provide a proper basis for upholding a step three decision).  Where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  The Court "should, indeed must, exercise common sense."  *Id*.  "The more comprehensive the ALJ's explanation, the easier [the] task; but [the Court] cannot insist on technical perfection."  *Id*.

Here, the ALJ's discussion at step two provided the necessary basis for the Court to follow the ALJ's reasoning in assessing the RFC and at step four, and is articulated with sufficient particularity to allow for judicial review.  After reviewing the evidence, the ALJ found that Ms. Crandall did not have any severe mental medically determinable impairments, but he nonetheless limited her mental RFC because of the "cumulative effects of any organic mental impairment, her experience of chronic pain, and any medication side-effects."  AR 39. Accordingly, "when giving all possible deference to the claimant's allegations and her historical treatment records, the [ALJ] included functional limitations relating to the basic mental tasks of work [in the RFC] in an abundance of caution."  AR 38.  The ALJ ultimately limited Ms.

Crandall to "understanding, remembering, and carrying out simple and detailed but not complex instructions, further defined as semi-skilled (SVP 4 or below) work; making commensurate semi-skilled (SVP 4 or below) work related decisions; dealing with changes consistent with a semi-skilled (SVP 4 or below) setting . . . ."[10]  AR 41.  The Court cannot say that the ALJ failed to properly analyze Ms. Crandall's mental impairments.

Ms. Crandall criticizes the ALJ for failing to consider the relevant factors that were supported by the record.  Doc. 20 at 7.  She contends that the ALJ did not consider "the possibility that psychological disorders combine with physical problems."  Doc. 20 at 7.  She does not, however, explain how the ALJ failed to consider this factor.  It is clear to the Court that the ALJ considered Ms. Crandall's mental impairments in combination with her physical impairments.  For example, the ALJ stated that Ms. Crandall's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  AR 37.  He further noted that she has a "longitudinal history of normal mental status evaluations," and that her mental impairments "are generally a factor of her physical impairments and changed life circumstances."  AR 39.  Nevertheless, the ALJ found that while Ms. Crandall would not have any severe mental medically determinable impairments, he still provided for limitations "due to the cumulative effects of any organic mental impairment, her experience of chronic pain, and any medication side-effects" in the RFC.  *Id.*  The ALJ, therefore, considered and accounted for the combined effects of Ms. Crandall's mental and physical impairments.

---

[10] Ms. Crandall does not take issue with the skill level provided by the ALJ.

Citing *Fleetwood v. Barnhart*, 211 F. App'x 736 (10th Cir. 2007), Ms. Crandall argues that "[t]he ALJ may not require a claimant to have sought mental health treatment from a mental health specialist before finding severe mental impairment."  Doc. 20 at 7.  In *Fleetwood*, the Tenth Circuit reversed the district court's affirmance of the Commissioner's decision and remanded in part because of the ALJ's findings at step two.  At step two, the ALJ in *Fleetwood* found that the claimant's mental impairment was nonsevere because she had not had *any* psychiatric treatment while also noting that the claimant's treating physician treated her for anxiety disorder for nearly two years.  *Fleetwood*,  211 F. App'x at 739.  This inconsistency along with the lack of analysis "with any specificity or clarity allowing for meaningful review" warranted remand for further proceedings to address the claimant's severe impairments.  *Id*.

Here, Ms. Crandall has not argued that the ALJ made an error at step two.  *See* Doc. 20. Furthermore, the lack of treatment for her mental impairments was not the only reason the ALJ gave in finding Ms. Crandall's anxiety and depression nonsevere.  Ms. Crandall herself notes that "[t]he ALJ's decision focuses on a lack of mental health treatment, the ability to travel out of state, and manage her activities of daily living."  Doc. 20 at 14.  The ALJ also noted that "routine mental status examinations across the record document unremarkable status in terms of memory, attention, cognition and thought processing or thought content."  AR 38.  The ALJ also relied on the evidence that Ms. Crandall "read, play[ed] games on her phone, and use[d] computers and social media for recreation," that she had "the mental abilities to manage her own finances but lacks resources," that she "has no difficulty getting along with others," that Ms. Crandall believed that she was only able to pay attention for 20 to 30 minutes at a time but that she usually finished what she started, and that the state agency consultants found that Ms. Crandall did not have more than a mild limitation in any functional area.  *Id*.  The ALJ  provided ample reasons

beyond her lack of formal treatment when finding Ms. Crandall's mental impairments nonsevere. *Fleetwood* therefore is distinguishable.

Because Ms. Crandall has not established that the ALJ erred in assessing her RFC with respect to her mental impairments, I do not recommend remand on this basis.

      B.  The ALJ Properly Assessed Ms. Crandall's Symptoms and Limitations Pursuant to SSR 16-3p.

In determining whether an individual is disabled, under SSR 16-3p, an ALJ must consider all symptoms, including pain, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2. "Symptoms" include "the individual's own description or statement of his or her physical or mental impairments," but those statements "alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* Instead, an ALJ must consider alleged impairment-related symptoms using a two-step process. *Id.* At step one, the ALJ determines "whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. At step two, the ALJ considers "the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.*

In addition, when evaluating the intensity, persistence, and limiting effects of an individual's symptoms, SSR 16-3p directs the ALJ also to consider the factors in 20 C.F.R. § 416.929(c)(3), which include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual

receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2017 WL 5180304, at *7.

Ms. Crandall contends that the ALJ did not properly consider her activities of daily living, frequent pain management, and regular complaints of high pain levels.  Doc. 20 at 15. She argues that there is substantial evidence that she cannot walk or stand for two hours at a time as required for light work.  *Id.* at 16.  While Ms. Crandall outlines the ALJ's decision and summarizes the evidence, she does not explain why the ALJ's decision does not meet the correct legal standards or is not supported by substantial evidence.  *See* Doc. 20 at 15–17.  Ms. Crandall's challenges to the ALJ's findings amount to nothing more than a request to reweigh the evidence, which the Court will not do.  *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight.") (emphasis in original).

The ALJ specifically stated that in evaluating Ms. Crandall's subjective symptoms, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p."  AR 41.  The Court takes the ALJ at his word.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").  Further, the ALJ thoroughly considered Ms. Crandall's daily activities as well as the objective medical evidence, and found that Ms. Crandall's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  AR 42.  For example, the ALJ noted that Ms.

Crandall was able to manage a broad range of activities, including reading, playing games on her phone, using computers and social media, preparing meals, assisting with household chores and tasks, although she also relied on her sons for household tasks.  AR 38, 42.  She can drive and shop in stores, manage her finances, and spend time with family and friends.  AR 38.  The ALJ noted Ms. Crandall's was able to manage household bills, insurance, and her parents' affairs.  AR 42.  He also discussed her ability to perform "[l]ight exertional activity," including regularly walking two miles a day with her son[11] and participating in a weekend event where she walked 10 miles.[12]  AR 43.

The ALJ explained that objective evidence undermined Ms. Crandall's complaints of disabling pain.  For example, the ALJ reviewed and considered Ms. Crandall's "longitudinal evidence regarding pain management interventions and more remote imaging of the neck and spine."  AR 42.  He additionally reviewed and considered the previous ALJ's decision and gave "due consideration to any relevant changed circumstances or worsening of [Ms. Crandall's] impairments."  AR 43.  The ALJ considered Ms. Crandall's routine pain management treatments and complaints of high pain levels, which he noted "are typically well-managed with routine medication."  *Id*.  The ALJ explained that although Ms. Crandall reported significant pain, "objective measurements note that she presents with no acute distress and demonstrates wholly normal strength, gait, range of motion and gross motor function," and that "monthly evaluations

---

[11] Ms. Crandall argues that "there is no indication in the evidence that Ms. Crandall continued a 2-mile-a-day walking program."  Doc. 20 at 16.  The record evidence, however, indicates that in January 2022, Ms. Crandall reported that she was walking about two miles a day with her son.  AR 1076.

[12] Ms. Crandall complains that the ALJ "failed to paint in the reality of the regret Ms. Crandall had in pushing herself to walk that much . . .."  Doc. 20 at 16.  The ALJ did, in fact, acknowledge that Ms. Crandall "estimates that she walked about 10 miles over the course of the weekend with frequent breaks but that she was very sore in the days and weeks thereafter."  AR 42.

note that she is compliant with prescription medication and that it is helpful for controlling or reducing her pain levels." *Id.*

The ALJ's thorough discussion of the evidence and the reasons for his conclusions demonstrate he applied the correct legal standards under SSR 16-3p and the factors in 20 C.F.R. § 416.929(c)(3). Ms. Crandall's arguments are ultimately a request to reweigh the evidence, which the Court will not do. *Oldham*, 509 F.3d at 1257. Ms. Crandall does not demonstrate that the ALJ failed to properly evaluate her claims under SSR 16-3p, and I do not recommend remand on this basis.

   C. <u>Ms. Crandall Fails to Develop Her Argument With Regard To Obesity</u>.

Pursuant to SSR 19-2p, the ALJ "must consider the limiting effects of obesity when assessing a person's RFC . . . . As with any other impairment, [the ALJ] will explain how [he or she] reached [his or her] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). Ms. Crandall argues that the ALJ mentioned Ms. Crandall's obesity but "merely recited the requirements under SSR 19-2p, and failed to make any assessment about any limiting factors." Doc. 20 at 16. While Ms. Crandall acknowledges that the ALJ took the factors into account in reaching his conclusions, she does not explain what more the ALJ was required to do with regard to his assessment under SSR 19-2p. *Id.*

The scope of the court's review is limited to the issues the claimant "adequately presents on appeal." *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). The Court is unable to address arguments that are insufficiently developed because the Court "will not speculate on [the claimant's] behalf." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). Ms. Crandall bears the burden of showing that reversal of the Commissioner's decision is warranted. *See Shinseki v. Sanders*, 556 U.S. 396, 409-11 (2009). Ms. Crandall has not met her burden, and I do not recommend that the Court remand on this basis.

## VI.     Conclusion

For the reasons stated above, I find that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.  I therefore recommend that the Court deny plaintiff Kathryn Michele Crandall's Motion to Reverse and Remand, with Supporting Memorandum (Doc. 20), affirm the decision of the Commissioner, and dismiss this case with prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id*.  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge